**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ROBERT LOWN,

                Petitioner,                Case Number: 2:09-CV-11327

v.                                    HON. DENISE PAGE HOOD

WILLIE SMITH,

                Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Michigan state prisoner Robert Lown has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner, who is presently incarcerated at the Ionia Maximum Correctional Facility, in Ionia, Michigan, challenges his convictions for first-degree premeditated murder/first-degree felony murder, carrying a dangerous weapon with unlawful intent, two counts of carjacking, armed robbery, carrying a concealed weapon, being a felon in possession of a firearm, and four counts of felony firearm. Respondent argues that the claims should be denied because they are without merit and/or not cognizable on federal habeas review. For the reasons discussed, the Court denies the petition and denies a certificate of appealability.

### I.  Facts

Petitioner's convictions arise from the beating and stabbing death of Greg Gierke, Sr., and the armed robbery of Robert Neal. The Michigan Court of Appeals summarized

the facts adduced at trial as follows:

Officer Scott Malace of the Saginaw Township Police Department testified that on the night of November 21, 2004, he arrived at a residence that matched the general description given by a 911 caller, and "observed a white male subject laying on the floor of the kitchen with a chair partially across his neck, what appeared to be several knives sticking in his chest and surrounded by blood on the floor." The officers determined that the victim was deceased.

Testimony adduced at trial indicated that the victim, Greg Gierke, Sr., died of blunt force head trauma and stab wounds to the chest. According to the Saginaw County medical examiner, Gierke had been stabbed nine times using two forks and seven knives. Additionally, the medical examiner testified that Gierke had been struck in the head at least 21 times by a weapon that was consistent with a bloody wrench found at the crime scene.

Katie Davidson testified that on the night of the murder she arrived at the home of Gay Lyn Dittmar, Lown's brother's fiancee, around 9:30 p.m. or 10:00 p.m. While at the house, she agreed to give Lown, who she had just met for the first time, a ride home. However, while en route, Lown told her "he had to drop some tools off to his friends" and directed Davidson to drive to that location. According to Davidson, Lown had carried hand tools with him into her vehicle. Davidson also testified that during the 30-minute drive, Lown asked her about a movie called Natural Born Killers and asked her if she "could ever watch somebody be killed[.]"

Davidson testified that when they arrived at the house to which Lown directed her, Lown told her to "sit in . . . [her] truck while he went and handed the tools off." She testified that she watched Lown knock on the front door and then talk for a minute with the man who answered, after which both men walked into the house. Lown was carrying the tools when he went inside. Davidson testified that five or ten minutes later Lown reached his hand out the door and waved her in. She entered the house and found the man who had answered the door on the floor in front of the refrigerator, laying on his left side. The man was "all bloody." Lown was holding a wrench in his left hand. Lown told Davidson "to go off into the bedroom and grab . . . [j]ewelry, expensive stuff," but she refused. When Lown went down the hallway, Davidson left.

Virgil Lown, Lown's uncle, testified that Lown arrived at his house around

2

12:30 a.m. the night of Gierke's death. Lown arrived in a truck and had a duffel bag full of hunting equipment. The duffel bag, hunting equipment, and truck were later identified as belonging to Gierke. Lown took Virgil Lown's wife's van without permission and left the truck behind.

Leonard Christopher, a friend of Lown's, testified that Lown called him at about 6:30 a.m. the morning after Gierke's death and asked, among other things, if he knew anybody who wanted to buy a .357 magnum pistol. According to Gierke's son, his father owned a .357 magnum that was unaccounted for when he went to his father's house after his death.

Robert Neal testified that he was working as the assistant manager at Self-Serve Lumber Company in Saginaw in November 2004. According to Neal, shortly after 7:30 a.m. the morning after Gierke's murder, Lown entered the store and robbed him at gunpoint of his car keys and the $160 in the cash register till. During the robbery, Lown told him that "I just bludgeoned somebody to death this weekend and I'm not going back. I need your car." Neal testified that Lown then escorted him to the back area of the store and retrieved the videotape from the surveillance system. Neal stated that Lown barricaded him in the "tape room" and left with Neal's 1995 Grand Prix, the money from the till, and Neal's in-store cell phone.

*Lown*, slip op. at 1-3.

## II. Procedural History

Following a jury trial in Saginaw County Circuit Court, Petitioner was convicted of first-degree premeditated murder/first-degree felony murder (alternative theories), carrying a dangerous weapon with unlawful intent, two counts of carjacking, armed robbery, carrying a concealed weapon, and three counts of possession of a firearm during the commission of a felony. Prior to presentation of proofs, Petitioner pleaded guilty to one count of being a felon in possession of a firearm, an additional count of felony firearm, and to being a fourth-offense habitual offender.

Petitioner filed an appeal of right in the Michigan Court of Appeals. He raised the

3

following claims:

I.      Mr. Lown was deprived of his Am. VI right to the effective assistance of
        counsel and his right to due process where trial counsel failed to move to
        sever the trial of the charges involving Robert P. Neal, where there was no
        basis for joinder and the injustice was manifest.  It was also ineffective
        assistance for counsel to fail to pursue an insanity defense.

II.     Mr. Lown was deprived of his Ams. V and XIV rights of due process when
        evidence of prior, uncharged crimes were admitted into evidence.

III.    Mr. Lown was deprived of his Ams. V and XIV rights of due process when
        he was sentenced to a term in excess of his life expectancy.

The Michigan Court of Appeals affirmed Petitioner's convictions and sentences.

*People v. Lown*, No. 269363 (Mich. Ct. App. Aug. 16, 2007).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court.

He raised the same claims raised in the Michigan Court of Appeals.  The Michigan

Supreme Court denied leave to appeal.  *People v. Lown*, 480 Mich. 1010 (Mich. Jan. 8,

2008).

Petitioner also filed a delayed application for leave to appeal his plea-based

convictions in the Michigan Court of Appeals.  The Michigan Court of Appeals denied

leave to appeal.  *People v. Lown*, No. 276794 (Mich. Ct. App. June 27, 2007).  Petitioner

did not seek leave to appeal to the Michigan Supreme Court.  *See* Affidavit of Corbin R.

Davis, Clerk, Michigan Supreme Court, 9/30/09.

Petitioner then filed the pending habeas corpus petition.  He raises the same claims

raised in state court, excluding those raised in connection with his plea-based convictions.

**III.  Standard**

4

The petitioner's claims are reviewed against the standards established by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA).  The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (*quoting Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).  "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case."  *Wiggins v. Smith*, 539 U.S. 510, 520, 123 S. Ct. 2527, 156 L. Ed.2d 471 (2003) (*quoting Williams*, 529 U.S. at 413).  However, "[i]n

5

order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 789 (2011), *quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams,* 529 U.S. at 412. Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002). "[W]hile the

6

principles of "clearly established law" are to be determined solely by resort to Supreme

Court rulings, the decisions of lower federal courts may be instructive in assessing the

reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488,

493 (6th Cir. 2007), *citing Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003);

*Dickens v. Jones*, 203 F.Supp.2d 354, 359 (E.D. Mich.2002).

Lastly, a federal habeas court must presume the correctness of state court factual

determinations.  See 28 U.S.C. § 2254(e)(1).  A petitioner may rebut this presumption

only with clear and convincing evidence.  *Warren v. Smith*, 161 F.3d 358, 360-61 (6th

Cir. 1998).

## IV.  Discussion

### A.  Ineffective Assistance of Counsel Claim

Petitioner argues that habeas relief should be granted because his constitutional

right to the effective assistance of counsel was violated.  Specifically, Petitioner argues

that his counsel was ineffective in failing to move to sever the charges involving the

armed robbery of Robert Neal and in failing to pursue an insanity defense.

The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984),

governs claims of ineffective assistance of counsel.  *Towns v. Smith*, 395 F.3d 251, 258

(6th Cir. 2005).  To show a violation of the Sixth Amendment right to effective assistance

of counsel, a petitioner must establish that his attorney's performance was deficient and

that the deficient performance prejudiced the defense.  *Strickland*, 466 U.S. at 687.  An

attorney's performance is deficient if "counsel's representation fell below an objective

7

standard of reasonableness." *Id.* at 688.  The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.  "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689.  The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688) (internal quotes omitted)).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.  The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction [or sentence] resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

"Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, __ U.S. __, 130 S. Ct. 1473, 1485 (2010).

> [T]he *Strickland* standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve.  *Strickland*, 466 U.S. at 689-90.  Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the

attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. . . . The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S. at 690.

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," *id.*, at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ___, 129 S.Ct. at 1420. The Strickland standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ___, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, __ U.S. __, 131 S. Ct. at 788.

First, Petitioner argues that counsel was ineffective in failing to move to sever charges involving the armed robbery of Robert Neal. The Michigan Court of Appeals held that, under Michigan Court Rules, Petitioner was not entitled to have the felon-in-possession charge severed because it arose from the same conduct as the other offenses. *Lown*, slip op. at 3, citing Mich. Ct. R. 6.120. Because severance would not have been warranted under Michigan law, counsel was not ineffective for failing to so move. *See Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000) (holding that a lawyer does not perform deficiently or prejudice his or her client by failing to file meritless motions).

Second, Petitioner argues that counsel was ineffective in failing to raise an insanity defense.  Under Michigan law, "[a]n individual is legally insane if he proves, as a result of mental illness as defined in the mental health code, that he lacked the substantial capacity to appreciate the nature and quality or the wrongfulness of his conduct or lacked the ability to conform his conduct to the requirements of the law."  *Lautner v. Berghuis*, 694 F. Supp. 2d 698, 722 (W.D. Mich. 2010) (*citing People v. Carpenter*, 464 Mich. 223, 231, 627 N.W.2d 276, 280 (2001), Mich. Comp. Laws § 768.21a(1)).

The Michigan Court of Appeals held that counsel was not ineffective in failing to raise an insanity defense.  The state court reasoned, in relevant part:

> In support of his assertion that his counsel was ineffective for not pursuing an insanity defense, Lown cites the conversation he had with Katie Davidson in which they discussed, among other things, the movie Natural Born Killers, his alleged behavior at the crime scene, and the brutal nature of the crime.  However, the fact that an individual discussed a mainstream movie known for its violent content does not show that this individual lacks the cognitive ability to appreciate the nature of criminal conduct or the volitional capacity to conform to the law.  The act of viewing and discussing a movie, even if the violence of that movie is lauded, does not conclusively establish that a person is legally insane.  Nor does, as Lown's argument suggests, the violence of the crime directly correlate to the actor's sanity.  Lown's argument presumes that the more bizarre or horrific the crime, the more likely it is that the actor lacks the requisite sanity to be held responsible.  However, while these characteristics may raise questions about an actor's sanity, they do not necessarily evidence defective cognitive and volitional ability, let alone establish a prima facie case of insanity.  Therefore, because the record does not support a finding that an insanity defense stood a reasonable chance of succeeding, trial counsel cannot be deemed ineffective for not pursuing it.

*Lown,* slip op. at 4 (internal citations omitted).

The record shows that two experts evaluated Petitioner to assess criminal

10

responsibility.  The first expert to assess Petitioner's criminal responsibility was Dr. Joe

A. Galdi, a psychologist with the State of Michigan's Center for Forensic Psychiatry.  Dr.

Galdi concluded that Petitioner was not suffering from substantial mental illness at the

time of the offenses, and that he was able to appreciate the nature and quality, and

wrongfulness of the conduct, and able to conform his conduct to the requirements of the

law.  The second expert, Dr. George J. Drozd, was appointed by the court upon defense

counsel's motion for appointment of an independent psychiatric expert.  After considering

available documentation, Petitioner's history, and test outcomes, Dr. Drozd concluded

that Petitioner was able to appreciate the wrongfulness or criminality of his conduct and

that he did not meet the statutory definition for insanity.

The Court concurs with the state court's finding that Petitioner's discussion of a

popular, mainstream, though violent, movie is not persuasive evidence that Petitioner was

suffering from a mental illness.  Similarly, the gruesome nature of the crime, by itself, is

not sufficient to render counsel's failure to raise an insanity defense ineffective. This is

particularly so because the two experts found that Petitioner did not meet the statutory

definition of insanity.

"There is a 'strong presumption' that counsel's attention to certain issues to the

exclusion of others reflects trial tactics rather than 'sheer neglect.'" *Richter*, 131 S. Ct. at

790, *quoting Yarborough v. Gentry*, 540 U.S. 1 (2003).  Counsel is not required to be a

"flawless strategist or tactician" and may not be faulted for a "reasonable miscalculation."

*Id.* at 791.  In this case, counsel's decision to forego an insanity defense finds support in

11

the record and in the expert opinions.  Thus, the state court's conclusion that counsel was not ineffective is not contrary to or an unreasonable application of *Strickland*.

### B.  Other Act Evidence

Petitioner next argues that the state court improperly admitted other act evidence when it allowed testimony regarding the armed robbery of Robert Neal.  As discussed above, the Michigan Court of Appeals held that the Neal robbery and the murder case were properly joined.  Therefore, testimony regarding the armed robbery of Robert Neal is not "other act" evidence because it is formed the basis for the armed robbery charge against Petitioner.

Moreover, the United States Supreme Court has declined to hold that the admission of similar "other acts" evidence is so extremely unfair that its admission violates fundamental conceptions of justice.  *See Dowling v. United States*, 493 U.S. 342, 352-53, 110 S. Ct. 668, 674-75 (1990).  Although the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms.  "There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  Consequently, there is no Supreme Court precedent that the state court decisions could be deemed "contrary to" under 28 U.S.C. § 2254(d)(1).  *Id.* at 513.  Petitioner's challenge to the admission of this evidence, therefore, does not warrant habeas relief.

### C.  Sentencing Claim

Finally, Petitioner argues that this sentence of 75 to 100 years in prison for each of his carjacking convictions is excessive because there is no reasonable likelihood that he will outlive his sentence.

"[T]he Eighth Amendment does not require strict proportionality between crime and sentence.  Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (quoting *Solem v. Helm*, 463 U.S. 277, 288 (1983)).  Only "extreme sentences that are grossly disproportionate to the crime are prohibited." *United States v. Flowal*, 163 F.3d 956, 963 (6th Cir. 1998) (quoting *Harmelin*, 501 U.S. at 995-97).  The Sixth Circuit has held that "a sentence within the statutory maximum set by statute generally does not constitute 'cruel and unusual punishment.'" *United States v. Organek*, 65 F.3d 60, 62-63 (6th Cir. 1995).  The statutory maximum for carjacking is life imprisonment.  Mich. Comp. Laws § 750.529a. The petitioner was sentenced within the statutory maximums.

Additionally, "[t]he Supreme Court has never held that a sentence to a specific term of years, even if it might turn out to be more than the reasonable life expectancy of the defendant, constitutes cruel and unusual punishment." *United States v. Beverly*, 369 F.3d 516, 537 (6th Cir.2004) (*citing Harmelin*, 501 U.S. at 996).  Petitioner is not entitled to habeas relief on this claim.

### V.  Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed

13

unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of

the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or

deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the

denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must show "that

reasonable jurists could debate whether (or, for that matter, agree that) the petition should

have been resolved in a different manner or that the issues presented were adequate to

deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)

(citation omitted). In this case, the Court concludes that reasonable jurists would not

debate the conclusion that the petition fails to state a claim upon which habeas corpus

relief should be granted. Therefore, the Court will deny a certificate of appealability.

### VI.  Conclusion

For the foregoing reasons, the petition for a writ of habeas corpus and a certificate

of appealability are **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

**IT IS ORDERED**.

                                        s/Denise Page Hood
                                        United States District Judge

Dated:  June 30, 2011

I hereby certify that a copy of the foregoing document was served upon Robert Lown
#243985, 1576 W. Bluewater Highway, Ionia, MI 48846 and  counsel of record on June
30, 2011, by electronic and/or ordinary mail.

                                        s/LaShawn R. Saulsberry
                                        Case Manager

14